## ADDIE LENTZ v. CITY OF DALLAS.

### No. 1159. Decided February 23, 1903.

**1.—Cities—Constitutional Law—Police Power Distinguished from Taxation—Sidewalks.**

Questioned whether the ruling in Hutchinson v. Storrie, 92 Texas, 685, and Norwood v. Baker, 172 U. S., 269, as to the constitutionality of local assessments for street improvements, applies to the construction of sidewalks at the expense of abutting owners, the latter falling rather under the city's power of police than that of taxation. (P. 265.)

**2.—City of Dallas—Charter—Liability for Defective Sidewalk.**

The city charter, having provided for the construction and repair of sidewalks at the expense of owners of abutting lots by making the cost a lien on the property, exempted the city from liability for injuries through defects in the walk, not occasioned by direct act of the city, "in the event that because the same adjoins a homestead or for any other reason, the city is unable to lawfully compel the owner to construct and repair a sidewalk by fixing a lien on his property for the cost." Held, that the exemption did not apply to a case of injury through defect in a grating covering an excavation under the walk, to the repair of which the general police power of the city was adequate and the proceeding by lien inapplicable. (Pp. 263-266.)

**3.—Leading Question.**

The question "Those grates were mighty light to start with?" should have been excluded as leading. (P. 266.)

**4.—Opinion Evidence.**

Testimony of one not qualified as an expert on iron work, that he judged a grating in a sidewalk was rather light for the purpose, since it did not stand the test of use, was inadmissible, since it was a mere conclusion of the witness which the jury could draw as well as he. (Pp. 266, 267.)

**5.—Same—Medical Expert—Probable Effect of Injuries—Charge.**

Plaintiff's recovery for future results of personal injuries should have been restricted by giving a requested charge limiting it to such results as were probable; and the evidence of a medical expert as to future results should also have been confined to such as were probable. (P. 267.)

Error to the court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Addie Lentz sued the city of Dallas for personal injuries from a defective sidewalk. Plaintiff recovered judgment and defendant appealed. The judgment being reversed and rendered for appellant, the appellee, plaintiff below, procured a writ of error.

*W. T. Strange* and *Crawford & Crawford,* for plaintiff in error.—The language of the Supreme Court of the United States in Norwood v. Baker is peculiarly applicable to the facts in the Hutcheson case; the assessment was an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power. The facts in the case before the court are quite different. Here the owner of the property, a brick building fronting on a public street in the business part of the city, for his own convenience, and whether with or without the permission of the city, had constructed a cellar under the sidewalk and covered the same with an iron grating. This grating became broken and out of repair,

and falling through it, Addie Lentz was injured. It is insisted that the city is not liable, because under its charter it has no power to fix a lien upon the abutting property for either the cost of constructing a sidewalk or keeping the same in repair. And this by reason of the fact that what is known as the front foot rule is under all circumstances and conditions unconstitutional and void.

We respectfully submit that this contention can not be successfully maintained. The front foot rule can only be held invalid where the assessments upon abutting property for a public improvement is a sum materially exceeding the special benefits which the abutting property may derive from the work. Nothing more is decided in the case of Hutcheson v. Storrie.

Where the facts show no abuse of the law, no discrimination against any particular individual, nor that the burdens imposed upon the property of one were other than those imposed upon that of other persons, under like circumstances, the front foot rule is proper. Tonawanda v. Lyon, 181 U. S., 389.

Where a property owner in a city for his own convenience makes an opening in the sidewalk leading to a cellar under his building it is no hardship upon him to make him keep the opening safe, but it would be unjust and a discrimination to compel other property owners to contribute to the expenses of keeping such grates in repair. It would seem that under such circumstances any other than the front foot rule would be unjust, and would in fact be the taking of one man's property and giving it to another.

In the case of French v. Barber Asphalt Co., 181 U. S., 325, the tax bill sued on was issued for paving with asphaltum Arc avenue, one of the oldest and best improved residence streets in Kansas City, and the assessment was according to the front foot rule. In the case cited and in Tonawanda v. Lyon, 181 U. S., 389, Norwood v. Baker is explained and limited to the facts in that case.

It will be noticed that while section 159 of the charter of the city of Dallas declares that the cost of constructing and keeping in repair the sidewalks shall be defrayed by the property owners according to the number of front feet owned by each,—it does not provide how the cost of repairing the sidewalk shall be ascertained, and the construction referred to is evidently the construction of sidewalks where none had existed before.

Section 55 of the charter authorizes the city to construct and repair sidewalks, and provides that the cost of constructing sidewalks and keeping the same in repair shall be entirely defrayed by the property owners in such manner as the city council may provide, and shall be a perpetual lien upon the property until paid. This section gives to the city a lien upon the property for the costs of repairs to sidewalks, and there is nothing shown in the record in this case why such lien can not be enforced. And if that part of section 159 of the charter which says, "In the event that because the same adjoins a homestead or for any

other reason the city is unable to lawfully compel the owner to construct and repair a sidewalk by fixing a lien upon his property for the cost, the city of Dallas shall never be liable to any person or property by reason of any defect in any such sidewalk," be valid, it certainly devolves upon the city to show its inability to fix such lien, and the only attempt to show such inability here is the assertion that the front foot rule is unconstitutional in all cases, no matter what the facts may be.

Sections 54, 55, 56 and other sections of the charter give the city the exclusive control over its streets, sidewalks and public grounds; this right over the public highways imposes upon the city the duty of keeping them in repair, and for every injury resulting from a neglect of this duty the city is responsible. City of Dallas v. Meyers, 55 S. W. Rep., 742; City of Dallas v. Jones, 93 Texas, 38; City of Galveston v. Posnainsky, 62 Texas, 118.

At common law a city corporation created by special charter is liable for an injury resulting from a neglect to keep its streets in repair, and it is not necessary that the right to sue therefor should be given by statute. 62 Texas, 132.

We respectfully submit that it is not in the power of the Legislature to confer upon the city of Dallas an immunity from this common law liability, while like exemptions are not extended to other municipal corporations. Durkee v. Janesville, 28 Wis., 464; Hincks v. Milwaukee, 46 Wis., 559.

Section 194 of the charter makes it a public act of which judicial notice shall be taken in all courts and places. Special Laws, 1899.

*W. T. Henry* and *J. J. Collins,* for defendant in error. [From argument for defendant in error in Supreme Court.]—Our view is that it will not be necessary for the court to go any further than the Court of Appeals went in the case, or consider any other question than the exemption of the city from liability under the clause of its charter set forth in the opinion of the Court of Civil Appeals. We submit to the court that the city is entitled to the benefit of this exemption upon two grounds. First, for the reason that the charter of the city of Dallas does not undertake to give to the city any power (by front foot rule or otherwise) to fix a lien upon abutting property to insure the repair of a sidewalk; and second, for the reason given by the Court of Civil Appeals in its opinion in the case; that is, on account of the doctrine established, as we understand it, by the Hutcheson v. Storrie case, of the unconstitutionality of the front foot rule in fixing liens for local assessments.

The validity of such an exemption clause in a charter of a city is upheld by the following cases, and is, we presume, not open to question: City of Houston v. Isaacks, 68 Texas, 116; City of Dallas v. Western Electric Co., 83 Texas, 243; City of Dallas v. Peacock, 89 Texas, 438; City of Dallas v. Young, 28 S. W. Rep., 1036; Fort Worth v. Shero, 41 S. W. Rep., 704.

We would respectfully call the attention of the court to the fact that

section 159 of the city charter undertakes to confer no right upon the city to fix a lien for the repair of a sidewalk upon the abutting property, and the only lien contemplated, or which the city is given the right to impose under the terms of the said section, is a lien for the original construction of the sidewalk. It is declared by this honorable court, in the case of the city of El Paso v. Mundy, 85 Texas, 316, that the result of the authorities demanding a strict and rigid construction of all laws relating to the levy of special assessments for local improvements would deny the existence of the right to fix a lien upon abutting property for the cost of any local work of improvement unless the right to fix a lien for such purpose is expressly conferred upon the city by the terms of its charter. It has been uniformly held, so far as we are aware, that imposing a lien upon the abutting property for the cost of construction of a sidewalk will not be held to include a lien for the cost of repairs. Elliott on Roads and Streets, 549; Beach on Pub. Corp., sec. 1062; 2 Desty on Taxation, 1296; City of Louisville v. Tyler, 64 S. W. Rep., 415.

The city of Dallas, under section 159, if it be conceded that the front foot rule is a constitutional basis for local assessments, has clearly the right to lawfully compel the abutting property owner to construct a sidewalk by fixing a lien on his property for the cost, but the exemption clause relieving the city from all damages is explicit in its provision that the city shall be relieved from all damages in the event it is unable to fix a lien upon the abutting property owner, not only for the construction, but for the repair of the sidewalk.

Even had the charter of Dallas given the city the power to impose a lien upon abutting property to secure the cost of repairs according to the front foot rule, we believe that, under the provisions of the Constitution of Texas, such an authority is not lawful, and that this case is necessarily disposed of by the decision and opinion of the court in the case of Hutcheson v. Storrie, 92 Texas, 685.

There is no expression in the opinion that indicates that the salutary rule there established is to be limited by the special facts of any case, but the broad doctrine announced that plain constitutional principles quoted will not permit one to be deprived of his property upon a false theory of benefits received, when in fact the rule prescribed furnishes no opportunity to determine the question of benefits, and admits of an arbitrary exaction, with no remedy against such a result.

We submit that whatever may be the meaning of the fourteenth amendment to the Constitution of the United States, as applied to local assessments, in protection against the deprivation of property without due process of law, when the right to levy local assessments according to an arbitrary basis has by long existence become recognized as due process of law, we believe it is altogether a different thing to say that under the constitutional provision of Texas prohibiting any person's property from being "taken, damaged or destroyed for or applied to public use without adequate compensation," a municipality can impound and sell property to pay for a public improvement under a rule which gives the owner no

opportunity to have determined if the benefits received are adequate compensation for the cost imposed. Cain v. City of Omaha, 60 N. W. Rep., 368; Hutcheson v. Storrie, ante.

[From brief for city of Dallas, as appellant, in Court of Civil Appeals.] Evidence showing the repair of a defective condition by which an injury has been caused after the occurrence of the injury is inadmissible. City of Dallas v. Meyers, 55 S. W. Rep., 742; Railway Co. v. McGowan, 73 Texas, 355; Railway Co. v. Hennessey, 75 Texas, 158; Railway Co. v. Johnston, 78 Texas, 540; Railway Co. v. Ayres, 83 Texas, 270; Railway Co. v. George, 85 Texas, 157; Railway Co. v. Gay, 88 Texas, 116.

Evidence of the defective condition of an iron grating from which appellee has received an injury at any time after the date of the injury is immaterial and inadmissible, as evidence of defective conditions must be restricted to the time and place of the accident. Railway Co. v. Mitchell, 75 Texas, 81.

A leading question calling for the conclusion of a nonexpert witness should not be permitted.

Evidence in regard to future injuries should be restricted to such as are reasonably probable or likely to result. Railway Co. v. Harriett, 80 Texas, 83; Railway Co. v. Mitchell, 75 Texas, 77.

The examination of a material witness upon leading questions by the party introducing the witness without showing any reason for allowing an infraction of the rule is not permissible. Railway Co. v. Dalwigh, 92 Texas, 653; Railway Co. v. Hammon, 92 Texas, 509.

The reading of depositions of parties to the suit in their own behalf taken long prior to the trial of the case, the parties being themselves present in court and not otherwise testifying, is an abuse of the discretion of the court and not permissible. Schnick v. Noel, 64 Texas, 408.

The court erred in instructing the jury that they could find for plaintiff on account of a misplaced iron grating in the sidewalk, whereas plaintiff in her petition specifically described the defect which occasioned her injury as being caused by bars being broken out of the grating and leaving a dangerous aperture. Johnson v. G. H. & N. Railway Co., 4 Texas Ct. Rep., 24; Rost v. Missouri P. Railway Co., 76 Texas, 168; Morris v. Kasling, 79 Texas, 141; Tinsley v. Penniman, 83 Texas, 54; Railway Co. v. Anderson, 76 Texas, 244; Stewart v. Gordon, 65 Texas, 344.

When there is no evidence of actual notice on the part of a city or its proper officers of a defective condition in a public sidewalk, the question of actual notice should not be submitted to the jury. Railway Co. v. Halton, 3 Texas Ct. Rep., 538; Railway Co. v. Eason, 35 S. W. Rep., 208; Pumphrey v. St. L. I. M. & S. Railway Co., 14 Texas Civ. App., 455; Railway Co. v. Miller, 15 Texas Civ. App., 428; Railway Co. v. Blohn, 73 Texas, 637; Joske v. Irvine, 91 Texas, 574.

The court erred in refusing the seventh special charge requested by the defendant, which properly restricted the measure of plaintiff's dam-

age for future injuries to such as the jury believed were the reasonably probable result of her injury and present condition. Shelley v. City of Austin, 74 Texas, 608; City of Fort Worth v. Johnson, 84 Texas, 137; May v. Hahn, 22 Texas Civ. App., 365; Railway Co. v. Ricketts, 54 S. W. Rep., 1090.

Constructive notice of defective conditions in a public sidewalk should be restricted by the charge of the court to notice to officers of the city charged with a duty in relation to the maintenance and repair of the sidewalks of the city. City of San Antonio v. Ball, 1 Texas Ct. Rep., 153; City of Dallas v. Meyers, 55 S. W. Rep., 742; City of Austin v. Colgate, 27 S. W. Rep., 896; Dillon on Mun. Corp., secs. 1024, 1025.

The city of Dallas is unable lawfully to compel the owner of abutting property to construct or repair a sidewalk by fixing a lien on the property for the cost, and consequently by virtue of its charter exemption is not liable for damages to any person or property by reason of any defect in such sidewalk not occasioned by the direct act of the city or an officer of the city. Charter of City of Dallas, sec. 159 (Special Laws of 1899, p. 129) ; Hutcheson v. Storrie, 92 Texas, 685; City of Dallas v. Meyers, 55 S. W. Rep., 742; Mayor v. Ewing, 2 Mun. Corp. Cases, 19; O'Harra v. City of Portland, 3 Ore., 525; Duncan v. City of Lynchburg, 3 Mun. Corp. Cases, 545.

WILLIAMS, ASSOCIATE JUSTICE.—Plaintiff, a child 10 years of age, stepped into a hole in a grating upon one of the sidewalks in Dallas, and for the injuries sustained recovered a judgment against the city, which on appeal was reversed by the Court of Civil Appeals, and judgment was rendered by that court in favor of the city. This action of the Court of Civil Appeals was based upon a provision of the charter of Dallas which was construed as exempting the city from the liability asserted against it. The evidence showed that the owner of a building which abutted upon the sidewalk had made an excavation under it and had inserted the grating to cover the opening in the walk thus made. At the time of the accident, according to testimony adduced for plaintiff, there was a hole in this grating into which the child stepped, and which had existed so long that the city ought to have known of and remedied it. The charter gave to the city complete control over the streets and sidewalks, and contained these further provisions:

"Sec. 55. The cost of constructing sidewalks and keeping the same in repair, together with the cost of collection, shall be entirely defrayed by the property owners in such manner as the city council may provide, and shall be a perpetual lien on the property in question until paid."

"Sec. 159. Whenever the city council, by resolution or otherwise, orders the construction of any sidewalk, it shall specify the kind of sidewalk required to be constructed and the width of same to be so constructed, and thereupon the city engineer shall issue a notice which shall be served upon the owner of such property, if in the city, or if such owner shall be out of the city, such notice shall be published in some

newspaper published in the city of Dallas five consecutive days. Such notice shall state the place where such sidewalk is required to be constructed, the kind of sidewalk required to be constructed and the width thereof, and the length of time, which shall not be more than thirty days from the date of the service of such notice, within which such sidewalk is required to be constructed, and that such property owner must proceed to construct the same, or appear before the city council at a regular meeting, giving the date of such meeting, and show cause why the same should not be constructed; and if such property owner shall not construct the same within the time required by the city council in the order or resolution of the city council requiring the same to be constructed, or shall not be excused from constructing the same by the city council, the city council shall advertise for bids for the construction of such sidewalk, and shall let a contract therefor to the lowest responsible bidder, in the discretion of the council; such contract may be for any length or amount of sidewalk. As soon as practicable after the letting of such contract the city engineer shall furnish the city council a statement showing the name of the owners of the property abutting on the sidewalk so constructed, if known, if not known shall so state, and a description of the property owned by such owners and the cost of the sidewalk immediately in front of the property so improved, and such cost shall be levied and assessed by the city council by ordinance against the property according to such statement by the city engineer, and said tax shall be a lien against such property from the date of the letting of such contract. Such ordinance shall state the amount of such tax against such respective lots or subdivisions of land, and the time when the same shall become due and delinquent; and if the same shall not be paid when due, the city collector shall proceed, as soon as practicable, to advertise and sell such property for the payment of such taxes, provided in cases of sale of such property for ad valorem taxes; provided, that it shall not be necessary that such sale shall take place at the same time as sales of property for ad valorem taxes. In the event that because the same adjoins a homestead, or for any other reason, the city is unable to lawfully compel the owner to construct and repair a sidewalk by fixing a lien on his property for the cost, the city of Dallas shall never be liable for damages to any person or property by reason of any defect in any such sidewalk not immediately occasioned by the direct act of the city, or of some officer for whose acts the city is responsible at law; and in all cases the property owner on whose property any sidewalk abuts, shall be under the duty to the public, as well as to the city, to keep the said sidewalk in repair, and shall be primarily liable to any and all persons for any injuries whatever occasioned to them or their property by reason of any such defect occurring by reason of the neglect or omission of such property owner to repair such sidewalk and to keep the same in repair, or by reason of his unlawful or wrongful act. In the event of a judgment against the city in all such cases where the property owner is made liable for damages by the provisions of this

section, the city shall be entitled to a recovery over against any such property owner held to be primarily liable for such damages under the provisions aforesaid."

The defense sustained by the Court of Civil Appeals is that, under the authority of Hutcheson v. Storrie, 92 Texas, 685, and Norwood v. Baker, 172 U. S., 269, those parts of section 159 which prescribe a mode of constructing and repairing sidewalks and of charging the cost thereof against the abutting property, are unconstitutional and void; that, therefore, "the city is unable to lawfully compel the owner to construct and repair the sidewalk by fixing a lien upon his property for the cost;" and hence is exempted by the latter part of the article from liability for the injury to plaintiff. In the two cases referred to assessments for improvements of streets were involved, assessments which could only be lawfully imposed in the exercise of the taxing power, exerted in subordination to the fundamental principles which limit the exercise of that power. The principle held to be disregarded in those cases was that which restricts the special burden to be imposed upon the adjacent property to an amount not in excess of the benefit resulting specially to such property from the improvement. Whether or not, if the principle of those decisions were applied to the provision quoted, it would on its face appear to be unconstitutional, is a question which this case, as we view it, does not present. Besides the taxing power, under which local assessments are levied, the city was invested with the police power which was ample to have enabled it to have caused the removal of the dangerous defect which existed in this sidewalk. Says Judge Cooley:

"The cases of assessments for the construction of walks by the side of the streets, in cities and other populous places, are more distinctly referable to the power of police. These footwalks are not only required, as a rule, to be put and kept in proper condition for use by the adjacent proprietors, but it is quite customary to confer by the municipal charters full authority upon the municipalities to order the walks of a kind and quality by them prescribed to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose, and in case of their failure so to construct them, to provide that it shall be done by the public authorities, and the cost collected from such owners, or made a lien upon their property. When this is the law the duty must be looked upon as being enjoined as a regulation of police, because of the peculiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use. Upon these grounds the authority to establish such regulations has been supported with little dissent.

"No doubt this requirement is sometimes in a measure oppressive, since the actual cost may exceed the pecuniary advantages to the lot owner; but this, in case of police regulations, is never a conclusive objection."

Another question which we need not determine is, whether or not article 159 is a legitimate exercise of police power, or is to be referred to the taxing power. For conceding for the purpose of argument, that the latter view of it is the correct one, the general power given to the city of Dallas over its sidewalks was sufficient to enable it to prevent or remedy such conditions as were shown to exist in this case. Macon v. Patty, 57 Miss., 407; Greensburg v. Young, 53 Pa. St., 280; Franklin v. Maberry, 6 Humph., 368; Washington v. Nashville, 1 Swan., 177; Goddard Petitioner, 16 Pick., 504; Woodbridge v. Detroit, 8 Mich., 309. These authorities, as well as the quotation from Cooley, go much further than it is necessary for us to go in this case. It was not at all necessary for the city to resort to the power given in cited provisions of the charter in order to have filled a hole in a sidewalk already constructed. Those provisions evidently contemplate construction and repairs of such magnitude as to make proper the adoption of the method thus provided for the doing of the work and fixing and defraying the expense, and are wholly inapplicable to such an inconsiderable work as the repairing of this grating; and since, in order to make such a repair, the city would not be required to resort to the proceeding provided in section 159, it follows, we think, that the provision giving immunity has no application. While the language of the exemption is that the city, in the event supposed, shall not be liable because of "any defect," the context makes it evident that the defects meant are such as are intended to be prevented by the exercise of the power just granted, and which exist because such power proves futile. The exemption has no application when the machinery, because of the failure of which such exemption is granted, is not to be relied on. It is unreasonable to suppose that the Legislature purposed that the city should resort to the cumbrous method devised for the construction and repair of sidewalks whenever it should become necessary to fill a hole therein. For such conditions the police power was entirely adequate, and there was no purpose to exempt the city from liability for damages resulting from a negligent failure to exercise that power, when the exercise of it and not the proceedings provided in section 159 were called for.

We are therefore of the opinion that the Court of Civil Appeals erred in sustaining this defense; and this makes it necessary that we examine the other grounds for reversal urged by the city before that court. We shall notice only those assignments which are held to present reversible error, and those upon which an expression may aid in another trial.

The petition alleged the defects in the grating to be that the iron was originally too light and insufficient to afford protection to passers, and that the frames and bars of it were broken. Plaintiff was allowed to ask a witness, who showed no qualification to give an opinion, this question: "Those grates were mighty light to start with?" To which the witness answered: "I am not an iron man, but I would judge they were rather light for that purpose, as they were broken out, and they did not stand the test they were used for." The question was plainly leading

and the answer expressed a mere conclusion of the witness, and a conclusion which the jury could draw as well as the witness. The objections made to them should have been sustained.

The charge of the court submitted to the jury whether the bars of the. grating were "broken or misplaced," and the point is urged, that, the petition having specifically alleged only that the parts were broken, a recovery because they were misplaced should not have been allowed. It is difficult to determine, from the way in which the evidence is stated, whether or not there was anything material in the part of the instruction assailed. Plaintiff's evidence tended to show that the bars were broken and there is much other evidence as to the condition of the grating, but whether there was any to which the word misplaced would have applied so as to make its use material, we do not clearly see from the evidence. As this may be easily remedied, there is no need for further comment, and it is likewise unnecessary that we determine whether or not, in either of the matters just discussed, there is reversible error.

The physician who treated plaintiff, when giving his opinion as to the nature, extent and duration of the injuries, was asked: "Is it not a fact that in medicine and surgery injuries apparently trifling in their nature, like broken ribs, etc., will produce effects in themselves that no one can foresee?" and answered in the affirmative. The objection to this, that it was not confined to the probable effects of the injuries, should have been sustained. Both question and answer assumed to speak of results not reasonably to be anticipated. Gulf, etc., Railway Co. v. Harriett, 80 Texas, 83. The court should also have given the charge requested by defendant, restricting plaintiff's recovery for future results of the injuries to such as would reasonably and probably result. Both of these rulings affect the amount of the recovery, which is large, and necessitate a reversal.

*Reversed and remanded.*